**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                       **NO. 05-231**

**NYRON JONES**                                  **SECTION I**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion to quash the jury venire filed on behalf of defendant, Nyron Jones.[1] Defendant argues that the jury selection plan for the Eastern District of Louisiana violates his rights pursuant to Sixth Amendment to the United States Constitution's fair cross section provision and pursuant to the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. §§ 1861-1878, because Hurricane Katrina displaced a disproportionately large number of African-Americans such that African-Americans will be systematically under-represented on jury venires.  For the following reasons, **IT IS ORDERED** that the motion to quash the jury venire is **DENIED.**

The Sixth Amendment to the United States Constitution

_____

[1] Rec. Doc. No. 23.

provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI.[2] The defendant's right to a trial by jury includes the right to a jury randomly drawn from a fair cross section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 697-98, 42 L. Ed. 2d 690 (1975). The JSSA, which codifies the Sixth Amendment's fair cross section requirement,[3] was enacted to implement the policy that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *Id.* (quoting 28 U.S.C. § 1861).

---

[2] The Sixth Amendment fully provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

[3] Section 1861 of the JSSA provides in pertinent part:
It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.
28 U.S.C. § 1861.
Defendant contends that the same systemic defect of the Eastern District jury plan, which also constitutes his constitutional claim, is violative of the JSSA.

-2-

Explaining the fair cross section requirement, the *Taylor* Court stated:

> in holding that petit juries must be drawn from a source
> fai[r]ly representative of the community we impose no
> requirement that petit juries actually chosen must mirror
> the community and reflect the various distinctive groups
> in the population.  Defendants are not entitled to a jury
> of any particular composition; but the jury wheels, pools
> of names, panels, or venires from which juries are drawn
> must not systematically exclude distinctive groups in the
> community and thereby fail to be reasonably
> representative thereof.

419 U.S. at 538, 95 S. Ct. at 702 (citations omitted); *see also*

*Holland v. Illinois*, 493 U.S. 474, 480, 110 S. Ct. 803, 807, 107

L. Ed. 2d 905 (1990)("The Sixth Amendment requirement of a fair

cross section on the venire is a means of assuring, not a

*representative* jury (which the Constitution does not demand), but

an *impartial* one (which it does).").

A defendant's *prima facie* case that a particular method of

selecting a jury violates the Sixth Amendment's fair cross

section requirement contains three elements:

> (1) that the group alleged to be excluded is a
> "distinctive" group in the community; (2) that the
> representation of this group in venires from which juries
> are selected is not fair and reasonable in relation to
> the number of such persons in the community; and (3) that
> this underrepresentation is due to systematic exclusion
> of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L.

-3-

Ed. 2d 579 (1979).[4]  Defendant bears the burden of establishing a *prima facie* violation as to all three elements; a failure to meet that burden defeats the claim.  *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001).  Defendant need not establish intentional discrimination to prove a fair cross section violation.  *Duren*, 439 U.S. at 368 n.26, 99 S. Ct. at 670 n.26. Once the defendant establishes a *prima facie* violation, the burden shifts to the government to show "a significant governmental interest" that is "manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group."  439 U.S. at 367-68, 99 S. Ct. at 670.

The jury selection plan for the Eastern District of Louisiana uses, as its source of prospective grand and petit jurors, voter registration lists from all of the parishes comprising this district, as supplemented by the inclusion of

---

[4] The Fifth Circuit has stated that "[i]n order to win relief under the [JSSA], a defendant must prove a 'substantial failure' to comply with its provisions."  *United States v. Hemmingson*, 157 F.3d 347 (5th Cir. 1998)(citing 28 U.S.C. § 1867(a)).  "A substantial failure is one that destroys the 'random nature or objectivity of the selection process.'"  *Id.* (quoting *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977)).

This Court understands defendant's JSSA claim to be the functional equivalent of his constitutional claim.  *See United States v. Weaver*, 267 F.3d 231, 236 (3d Cir. 2001)(stating that a prima facie violation of the constitution and the statute are established by the same three *Duren* elements), *cert. denied*, 534 U.S. 1152, 122 S. Ct. 1118 (2002); *United States v. Cannady*, 54 F.3d 544, 546 (9th Cir.)("The test for proving a prima-facie constitutional violation in the selection of a fair cross section is the same for challenges under both the Sixth Amendment and [the JSSA]."), *cert. denied*, 516 U.S. 878, 116 S. Ct. 210 (1995); *United States v. Test*, 550 F.2d 577, 584 (10th Cir. 1976)(en banc)(noting that a majority of lower federal courts have "constru[ed] the statutory 'fair cross section' standard as the functional equivalent of the constitutional 'reasonably representative' standard").

-4-

subsequent registrants to the latest practicable date.[5]  Names from the voter registration list are randomly drawn and placed in a master jury wheel.  Each of the thirteen parishes is proportionally represented in the master jury wheel.  The master jury wheel is to be emptied and refilled every four years.[6]

Names are drawn from the master jury wheel using the same random process, and the persons selected are mailed juror qualification forms to complete and return in order to determine whether they should be placed on the qualified juror wheel.[7]  Those who are qualified to serve and are not exempt from service are placed into the qualified juror wheel.[8]  Names are then drawn at random from the qualified jury wheel, and each person whose name is drawn is summoned for a one month term of jury duty.  Use of voter registration lists as the source for potential jurors has been upheld as constitutional and in accordance with the JSSA.  *See Timmel v. Phillips*, 799 F.2d 1083, 1087 (5th Cir. 1986); *United States v. Lewis*, 10 F.3d 1086, 1090 (4th Cir. 1993).

Defendant argues that, as a result of Hurricane Katrina,

---

[5] *See* Rec. Doc. No. 30, ex. A, Eastern District of Louisiana's "Plan for Random Selection of Grand and Petit Jurors Pursuant to the Jury Selection and Service Act of 1968" (updated version of the plan, adopted by the court on December 3, 1980, with amendments through October 2, 1996).  *See id.* p. 19 n.1.

[6] *Id.* at p. 7.

[7] *Id.* at pp. 7-9.

[8] *Id.* at pp. 12-13.

African-Americans were displaced in numbers greater than their
proportion among registered voters.[9]  Defendant further argues
that underrepresentation of African-Americans is inherent in the
jury selection process used in the Eastern District of Louisiana
to the extent that the clerk or the jury commission sends juror
qualification forms and summonses to pre-Katrina addresses.
According to defendant, because a disproportionately high number
of African-Americans were displaced, a disproportionately high
number of mailings to African-Americans at pre-Katrina addresses
will be returned as undeliverable, and a disproportionately
higher number of African-Americans will be disqualified from
being placed in the qualified juror wheel and from being selected
for venires.

    In order to remedy the exclusion of African-Americans,
defendant maintains that the jury commission must either find the
displaced persons who are drawn from the master jury wheel and
arrange for those ultimately selected for venires to come to New
Orleans, or amend the jury plan to provide for new draws from the
qualified jury wheel until the proportion of African-Americans on
the venire reaches approximately 25%, the same proportion of
African-Americans on venires prior to Hurricane Katrina.

---

[9] Defendant notes that "African-Americans constitute 31.56% of the
registered voters in the Eastern District of Louisiana, but [that they] were
approximately 51.38% of the registered voters displaced [by Hurricane Katrina]."
Rec. Doc. No. 23, p. 3 (citing documentary evidence attached to motion).
Defendant further suggests that "[w]hile approximately 15% of white registered
voters were displaced, the displacement rate rises to 36% for African-American
registered voters." *Id.*

Defendant satisfies the first element of his *prima facie* case as African-Americans are recognized as a "distinctive group" in the community. *See Williams*, 264 F.3d at 568; *McGinnis v. Johnson*, 181 F.3d 686, 689 (5th Cir. 1999). The government concedes this element. However, even assuming for the purpose of this motion that African-Americans were displaced disproportionately by Hurricane Katrina, defendant cannot establish the second element, *i.e.*, that the representation of African-Americans in venires from which juries are selected is not fair in relation to the number of such persons in the community.

Defendant's argument is premised on the assumption that the relevant community against which the group's representation is to be measured is the community as it existed prior to Hurricane Katrina. This Court is not persuaded that defendant has established that he is entitled to a jury venire which is representative of the community at some fixed point in time as opposed to the community that exists today. Moreover, even if he is entitled to a jury representative of the community as it existed, defendant has not established that the current jury venire is unconstitutionally underrepresentative. *Cf. Hamling v. United States*, 418 U.S. 87, 137-138, 94 S. Ct. 2887, 2917-18, 41 L. Ed. 2d 590 (1974)(holding that a four year-old jury wheel which did not contain anyone under 24 years old at the time of

the defendant's trial was constitutional, in spite of the fact
that a dated jury wheel would less accurately reflect the
population of the community); *United States v. Rodriguez*, 588
F.2d 1003, 1008-09 (5th Cir. 1979)(rejecting an argument that a
dated jury wheel failing to account for a recent and dramatic
increase in the number of eligible citizens in the district who
were originally from Spanish-speaking countries was
unconstitutional).

Additionally, even if the defendant could establish
underrepresentation, he has failed to establish that any
underrepresentation is due to systematic exclusion on the
government's part.  "There is systematic exclusion when the
underrepresentation is due to the system of jury selection
itself, rather than external forces."  *United States v. Rioux*, 97
F.3d 648, 658 (2d Cir. 1996)(holding that an inability to serve
juror questionnaires because they were returned as undeliverable
was not due to the system, itself, but to outside forces, such as
demographic changes); *c.f. United States v. Little Bear*, 583 F.2d
411, 414 (8th Cir. 1978)(holding that bad weather that lead to
underrepresentation of rural jurors and overrepresentation of
urban jurors did not amount to a constitutional violation); *State
v. McDonald,* 387 So. 2d 1116, 1123 (La. 1980)(rejecting a fair
cross section claim when a number of prospective jurors failed to
appear for service one day after New Orleans experienced heavy

and unexpected flooding); *United States v. Gometz*, 730 F.2d 475 (7th Cir. 1984)(concluding that the defendant had no statutory right to insist that the district court ensure that potential jurors responded to the district court's call).  In this case, any underrepresentation, if there is underrepresentation, was caused by external forces, *i.e.*, a natural disaster, and not by any systematic flaw or defect in the Eastern District of Louisiana's jury plan.[10]  Accordingly,

**IT IS ORDERED** that defendant's motion to quash the jury venire is **DENIED.**

New Orleans, Louisiana, February __3rd__, 2006.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court denies, without a hearing, Jones's motion to quash the jury venire because the affidavit of Jones's counsel and other documentary evidence attached to his motion, even if true, fails to establish a substantial failure to comply with the JSSA.  Section 1867(d) of the JSSA provides:

> Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner of clerk, and any other relevant evidence.

28 U.S.C. § 1867(d).